Case No. 15-6173, Mary Scott, for herself and as representative for the estate of Milton Scott v. Memorial Health Care System Inc. Oral argument not to exceed 15 minutes per side. Curtis Lee Bowe for the appellant. You may proceed. Good morning, Your Honors. Good morning. May it please the Court, my name is Curtis Bowe and I represent Mary Scott, who is here, although battling a coughing spat, so she's out resting. But her son is also here, Sgt. Michael Scott. I'd like to reserve five minutes for rebuttal. Fine. We're here on appeal with some very trying issues that have different interpretations, depending upon where we are or who's looking at them. Specifically, we're here for a redetermination of the trial court's error in dismissing an Emergency Medical Treatment and Active Labor Act claim alleging inappropriate screening, inappropriate stabilization, inappropriate transfer, and improper documentation. We're also here as a result of that claim to address the trial court's error in dismissing a Tennessee Consumer Protection Act claim arising out of the same circumstances of the EMTLA claim. Specifically, that Tennessee Consumer Protection Act claim regards failure to deliver services, false impressions, false advertising, all deceptive business practices, and the application of that Tennessee Consumer Protection Act to hospitals. Additionally, we're here to address the trial court's error in its refusal to allow a Rule 56 affidavit, which was necessary to obtain evidence that related to the disparate treatment of an individual who's on Medicaid and unable to pay as compared to the treatment delivered to private paying individuals, which is a requirement under EMTLA. Counsel, I thought we were here because the district court dismissed the claims as outside the statute of limitations. And, Your Honor, that was the framing that the court used. And as I'll discuss, the framing of that is important, and it's important for this matter. Ms. Scott originally filed her complaint as a pro se litigant. True. And she did so at the time of her husband's death and grieving. A terrible mistake not to have a lawyer over a thing like this. It is. It is. But if, in fact, what she alleged then bears no direct relation to what was filed later, there's no relation back, and the statute of limitations had, in fact, run. And that's the interpretation, and that's the problem, Your Honor, because it does, in fact, relate. When you have no training and you cannot articulate what the grounds are for your lawsuit based on law school training or other, and you say something such as, they hid information. Spoilation of the evidence, I think, is the phrase that was used in the original pro se complaint. As well as, they had individuals working on Mr. Scott who didn't document themselves properly and didn't deliver services properly. That relates specifically and directly to the business practices allegations set forth in the Tennessee Consumer Protection Act, both under Gordon and England from Tennessee regarding leniency, as well as the Runnels case. Okay, so I have the spoliation of evidence leading to alteration of medical reports. Yes, Your Honor. And that's really about it. Well, and if you break that down into its individual parts and the plain meaning of that language, which is what the pro se litigant would use, what he's saying is, it was deceptive. They lied to us. That's what he's saying. And that's what the Tennessee Consumer Protection Act with respect to business practices. Well, but the Tennessee Consumer Protection Act claim that you later had was, you can't say we are a number one hospital for strokes and then let somebody have a stroke and die. That's not related to this specific claim that there were alterations of the medical records. It's not. That consumer regulation has a whole different spin and focus. I mean, you can only stretch these things so far, counsel. You can't. They just can't swallow up everything out there. Understood, Your Honor. And let me back up. In the context of the Emergency Medical Treatment and Active Labor Act, what it calls for is, it's not a medical malpractice act. It's a tort act. So when you come to us and say they violated these provisions, what you're saying is that there's strict liability, and the inquiry is not what medical services were provided, but what was the business action that they took that prevented you from having an appropriate screening, appropriate transfer, and stabilization. When you talk about, as you described, spoliation versus a movement towards what we pled under the Tennessee Consumer Protection Act, in context, what we're saying is you hold yourself out as this. No, no. It's spoliation of evidence. When you say spoliation of evidence, what you're saying is... What evidence was that a reference to? Well, and, Your Honor... It was a reference to alteration of medical reports. There's an arrow in there. Yes, Your Honor, which is a claim that's made in EMTLA. There was an inappropriate documentation. That's what that claim relates to, and under the Tennessee Consumer Protection Act, it says you cannot take steps to promote one thing but then fail to deliver that, and that's the nexus. It is pro se litigant using terms that he thought were appropriate. Do you have any Tennessee precedent that says that a hospital that advertises itself as very good at strokes or, for that matter, all over Nashville, there are these signs saying St. Thomas Hospital is number one in heart care, and then somebody comes in and is basically, or at least arguably, the victim of malpractice, that instead of bringing a malpractice claim, they can bring a consumer regulation claim? Your Honor, there is no case that says it's a malpractice claim and instead of that you can bring a Tennessee Consumer Protection Act claim, but there is a case that says hospitals and doctors are not immune from addressing their business practices, and the issue that we have here is that a pro se litigant who has not afforded the correct standard of leniency espoused by the State of Tennessee or the Sixth Circuit with respect to an interpretation of their pleadings. Well, why don't you give me the name of the case that you say controls here? One moment. I've just not run into anything like that before. I mean, there are people who die of heart conditions at St. Thomas Hospital in Nashville all the time, and they don't bring consumer report actions as a result of it. If anything, they bring medical malpractice suits. The case is Procter v. Chattanooga Orthopedic Group, Tennessee Court of Appeals. It's a 270 Southwest 3rd. 273. 270, Your Honor. 270. Southwest 3rd. 3rd. Tennessee Court of Appeals, 2008. And what's the 270 Southwest 3rd? 56. 56. Yes, Your Honor. And what's the date on it? Tennessee Court of Appeals, 2008. It's April 23, 2008. Thank you. And that case stands for the proposition that hospitals, doctors are not immune under the circumstances where there are business practices that are at dispute. And that's really the issue that we have here is that there are business practices that Memorial is engaging in that this pro se litigant who was not subjected to the leniency of the strictures of pleading failed to properly say the magic language. And I apologize for disseminating it to that level, but that's exactly what's happening here. MTIL is not a medical malpractice act. So when my opponent argues that it should be subjected to the Tennessee Healthcare Liability Act and there are these hurdles that should be jumped, that's absolutely incorrect. It's not a medical malpractice act. And as a result, none of the requisites for medical malpractice claims are applicable. So where we are then with Ms. Scott is analyzing the facts of the circumstance. And the facts here were that Mr. Scott arrived at their ER at 1213, stayed there until 5 o'clock, received absolutely no medication for the stroke. He did receive steroid treatment for a misdiagnosis of Bell's palsy, but notice that's not Ms. Scott's claim. He also received oxygen, but there's no indication that that's designed to treat the stroke. They didn't even give him an aspirin, as the expert says. What they did do was they discovered the stroke two hours after his arrival and then let him sit. And at that point, three hours later, said we need to send him to Erlanger, and that violates the statute. That practice, those acts, are deceptive because it said, we're a stroke treatment center. Come to us. Get here fast. And my time is up, Your Honor. But get here fast, and what we'll do is we'll treat you. Well, he got there fast. He was actually in the building at the time he had the issues at 1213, but nothing occurred except five hours later they transferred him. Thank you. Thank you. May I please court Art Brock here on behalf of Memorial Health Care System? There really are two main categories raised by the appellant. One is the Consumer Protection Act of Tennessee, and the other is the dismissal on summary judgment under EMTALA. I'd like to address just in the order of the briefs the Tennessee Consumer Protection Act claim. The motion to dismiss had several bases, one of which was that that claim was untimely. That is ultimately the path that the district judge took in dismissing the case. These acts took place on March 26, 2012. The first complaint was filed March 21, 2013, dismissed voluntarily June 5, 2013. Then the second complaint filed in October of that same year. The Tennessee Consumer Protection Act has a one-year statute of limitations. These are what we have termed the state law claims that the motion to dismiss addressed, and clearly the only issue based on the filing was whether the savings statute applied and allowed the plaintiff to file more than one year after the occurrence. They relate to the same events, right? That is ultimately the question, Your Honor. What is the extent of the relation? They relate, at least in part, to the fact that Mr. Scott was at the hospital. The initial first complaint sets forth two claims that may be termed causes of action, and those are exfoliation of evidence and alteration of medical records. Under the foster test that we cite in our brief is the state interpretation of that. It is a question of whether these are indeed the same causes of action, and that is measured at least in part by not just what you term the cause of action, but what is the factual basis underlying it, and are they indeed the same transaction or occurrence. So those inquiries are very important to that test, but what I would point out are the cause of actions are clearly different, exfoliation of evidence, alteration of medical records, as opposed to these three claims under the Tennessee Consumer Protection Act, one for advertisement, one for misrepresentation, and one for these false impressions, all which relate in their core to a physician diagnosing a condition of Bell's palsy instead of diagnosing a stroke, which is not in any way related to the alteration of medical records or exfoliation of the evidence. They are instead related to what is said in the records and what medical decision-making was undertaken. Do we have any idea what the essence of the exfoliation and medical records claims are? I have the complaint in front of me, but was that the only material that's in the record that we have? Yes, that's all it is, Your Honor. There's a short state the facts of the case section that was filled out that relates to the CEO allowing these people to practice at the hospital, that these two physicians supposedly either omitted putting things in the records or intentionally changed the records, somehow stating that Mr. Scott was paralyzed three hours later than he was or the nurse supposedly changing or altering records. So those claims are all these people somehow intentionally modified the record to reflect. The subsequent claims are all here's what's based on the record and it's no longer you changed the record or you spoiled the evidence. It is now you misdiagnosed me. You did not diagnose a stroke. You diagnosed Bell's palsy. And the three TCPA claims the plaintiff puts forth are advertising, and that is we advertise that a remedy for stroke would be available. He came and he didn't get that remedy. That's not an alteration of record or spoliation of record. The next was a misrepresentation, and that is you had a diagnosis of Bell's palsy and said you needed treatment for Bell's palsy when you really didn't need treatment for Bell's palsy because they say you didn't have it. That, again, is not a spoliation of the record. That comes directly from the record. And the false impression one, essentially, the Consumer Protection Act version of a bait-and-switch advertising a certain service, someone coming in for that service, and you switch them to something else. Their claim is he came in for stroke treatment, but you switch him over to Bell's palsy treatment. Again, not an alteration in the record. And most of these Consumer Protection Act claims expand the time frame from the original complaint. The original complaint addressed only issues entering into the medical record. These expand them to advertisement and representations to the community at large well before these events. Maybe you know and maybe you don't, just out of curiosity, the thing that hit me about this was it's gotten around in public pretty much that there's a three-hour, what am I trying to say, a three-hour period in there, window in there, where there's something that can be done that in some instances will actually reverse a stroke. And there was a three-hour window here, unless I'm wrong about the times. I think that's what maybe she was complaining about originally. And the doctors later said, well, the procedure that you would use in that three-hour window was actually contraindicated. What does that mean? Does that mean that we didn't think it was necessary, or does that mean if we had done that it might have had negative effects if it wasn't? I mean, do you know what that means? I do, Your Honor. The American Heart Association and the American Stroke Association have a set of lengthy guidelines that talk about the three-hour window and permissible up to four-and-a-half now in today's world. Oh, that's good to know. For the administration of this TPA, this clot-busting drug, those windows of time are used because, in general, at that point, after that point, why can't they view the risk greater than the benefit? Because there's a major risk of bleeding in the brain and other places. There are relative contraindications, and that's what Dr. Rabot talks about in his affidavit. Those relative contraindications are very mild symptoms. That's one of the categories. And that's what he's saying. Even if we had diagnosed a stroke immediately, those symptoms are so minor, they are relative contraindication. Most physicians will not give the drug then, again, because the risk outweighs the benefit. And the risk is that you'll do even more damage than whatever is going on at the time. You'll turn an ischemic stroke, a blockage, into a bleeding or a hemorrhagic stroke because of the high risk of bleeding with this drug. Okay. Why was this patient transferred? A lot in the record about that, Your Honor, and the appropriateness of that transfer. Once a patient is outside the window of TPA, the only reasonably available chance that they have is what's called this endovascular treatment. It's where they go in and actually remove the clot mechanically. Those are experimental treatments. They're only available in one place in our area, Regional Stroke Center Erlanger. He was transferred there for the possibility that they would consider endovascular treatment. And the problem with all this causation evidence that we have in here is that even with TPA and endovascular treatments even less successful, it is still unlikely that a major stroke patient will receive a good recovery. That's why that causation evidence. I obviously am not as familiar with this record as I probably should be or will be by the time this is over, but wasn't there also a problem that he had been having symptoms not just in the hospital but the day before? I mean, when do you, on this TPA thing, when do you start counting? When does the window open? The window begins at the last time the patient was known to be normal. Well, that was not clear. By the family's report, that was 11 or 11.30 that morning. Yeah. And so when he came in and the physician initially diagnosed Bell's palsy, he was initially triaged around 1 in the afternoon, around 4 in the afternoon. He had a major change. He had many more significant symptoms. An emergency room physician called the neurologist who said, he's outside the window for TPA, let's do MRI, let's do CTA, and let's ship him to this regional stroke center for treatment. And that's where that process began. All right. Thank you. One gets into these cases and gets curious about the whole medical background as well as the legal background. So thank you. That's the short story of it, Your Honor. So what I would say is that these claims are not the same. The factual basis of the claims are not the same, so that it's not the same transaction or occurrence, so it really wouldn't relate back under the Foster test. And I believe there is an unpublished Sixth Circuit opinion that essentially adopts and applies Foster. I think it's Laney Brentwood Holmes. It was not cited, and I feel maybe it should be cited. Can you give us the site then and the name of the case? I can, Your Honor. Thank you, Your Honor. It is Laney Brentwood Holmes, LLC, versus town of Collierville, 144, Fed, APPX 506, Sixth Circuit, 2005. 144, appendix, what's the jump? Sorry, Your Honor. I moved too fast. It's 144, 506, 2005, Sixth Circuit. That essentially says, yes, they need to be the original complaint and the new complaint must allege substantially the same cause of action, which Foster says that while it's not necessary that the complaints be identical, the allegations need to arise out of the same transaction or occurrence, and ultimately the major test is notice. Was there notice? Well, that unpublished case is not the only case that says that, I hope. No, and the Tennessee case that interprets the savings statute is cited. That's Foster and it says that same thing, Your Honor. Unpublished federal opinions about state law don't strike some of us as being terribly weighty. The other area I'd like to cover rather quickly is that when you get down to these allegations, the three state law claims that are pled, it's essentially an advertisement, meaning you advertise a stroke remedy. I didn't get a stroke remedy. It's misrepresentation. You told me it was Bell's Palsy when it wasn't. It's false impression. You advertise stroke, but I come in and you didn't treat me for stroke. You treat me for Bell's Palsy. None of these all relate to medical diagnosis, medical treatment, medical decision-making, and under Tennessee law, a health care liability action is any civil action alleging that a health care provider caused an injury related to the provision of or failure to provide health care services to a person, regardless of the theory of liability. Are you saying then that the basis for a claim should be medical malpractice as opposed to these TCPA claims? Is that what you're arguing? It should have been pursued under that act, Your Honor, but I'm saying that any act, any civil allegation, and this is the state law claims, not the EMTALA claim, but any state law claim that arises out of the treatment, which he says here is Bell's Palsy, or the failure to treat, which is stroke, comes under that act and is subject to the requirements of that act. Those act requirements are essentially you must give notice at least 60 days before filing suit. You must file a certificate of good faith showing you have evidence to pursue this claim, and without those, you're subject to dismissal, including, without the certificate of good faith, dismissal with prejudice. My understanding, based on other cases, is that those are the requirements to file what we might call a medical malpractice claim, but is there a case that says you cannot file a TCPA claim that relates to medical treatment in Tennessee and you're limited to a medical malpractice claim? No, there's no case that says that, Your Honor. What we're saying is that if you are combining medical treatment with a Tennessee Consumer Protection Act claim, you still must follow the mandates of that statute. And what case do you rely on for that principle? I don't have a case that has interpreted that, Your Honor. So we would be the first to do that, even though we're a federal court? I don't believe there is a state case that addresses the Tennessee Consumer Protection Act aspect of that, Your Honor. I would just say there is a case that says, and we have cited it, that when you're practicing your profession, and these allegations, again, relate to medical diagnosis, medical treatment, and stroke, Bell's palsy, what do you do with that, that you are not engaging in trade or commerce. That's why we say these aren't Consumer Protection Act claims at all. So far as I understand, then, what you're saying is that there are literally no cases that you know of that address this intersection between the TCPA and the Tennessee medical malpractice in the sense of saying you can or can't file TCPA claims that come out of an arguable medical malpractice situation. Correct, Your Honor. No case that says you must follow those things. I use only the statute for that. There are the cases, the Proctor case, the Constant case, and the case I just cited to you there all in our brief, do say that when you are not in the business, entrepreneurial, or commercial aspect of medicine, when you're in the practice of the profession, whether it be medicine or law, you are outside of the Consumer Protection Act, and it simply does not apply. Thank you. This is a brief rebuttal, Your Honor. I'm going to borrow a phrase from my opponent's brief, which is, sounds in. The spoilation of the evidence and the destruction of the documents sounds in deception, which is what the Tennessee Consumer Protection Act is all about, protecting and safeguarding against business deceptions. Hospitals receive federal money through Medicaid for the provision of services. That's commerce. That's something that affects trade. As a result, hospitals are subject to the Tennessee Consumer Protection Act. The three-hour window now, four, that Mr. Brock and I discovered during this case, the hospital memorial continues to argue, listen, we transferred him because we had these experimental procedures that were available to us at Erlanger, despite the fact that they were minor symptoms. Well, if that's the case and, as they argue, he was stable, then there's no reason to let him sit for three hours after discovering that he had a stroke. You have to send him because, as Mr. Brock told you earlier, testimony evidence was 1130 or so was the onset. So now we're past that window. Why let him sit? Transfer him immediately because you've now discovered, yes, he's having a stroke and not Bell's palsy. So it's disingenuous to come and say to you, well, we didn't transfer him because it was minor symptoms. It was minor symptoms until 4 o'clock. That's disputed in the record, Your Honor, based on Dr. Mulliken's expert deposition as well as the affidavits presented by the hospital. 1251 was the first indication that there was a problem of stroke, and they didn't address that issue other than to run some tests. It's not until 230 that the neurologist calls in, does not examine Mr. Scott, and then concludes, yes, in fact, he's suffering from a stroke. Yet it's not until 4 o'clock that the determination is made to transfer him. So you have these minor symptoms that the hospital claims is going on, yet he's still sitting and they're taking no action, not even giving him an aspirin, to stabilize him so that he can be transferred. That's the violation. It's really a shame that she didn't understand at the time she decided to file pro se or that she didn't seek some help from a lawyer. I mean, I think what you're describing to me is a malpractice suit. And, Your Honor, had I been the lawyer on this from the beginning before she filed the lawsuit, I would have said malpractice out the gate. I got this case as a result of her saying to the federal court, spoliation and destruction of evidence. That's the danger of trying to represent yourself when somebody's, in this case, dead, I guess, by the time she filed it. And it is the danger. However, this circuit recognizes how we remedy that. In another case that is actually a 354 Fed Appendix 975, which is a 2009 case. Wait a minute, 354. Oh, this is another unpublished. 975. What's the name of this one? This is Gordon v. England. The issue there was a young lady had some problems with her employment, and her attorney dropped the ball. He failed to do proper pleadings. He failed to do all sorts of things, including non-suiting without her permission. She came back to court, and this circuit said, wait a minute, we're not going to let that go because it's so egregious to think that an attorney would dismiss something without your knowledge, just like it would be comparatively here, so egregious to think that you are in the hospital when you start having your stroke symptoms. Go to the emergency room. But the lawyer didn't do anything wrong here because there wasn't a lawyer. That's the problem. And I understand that, Your Honor. However, I'm placing the burden of that failure to aid this family on the hospital. So you want us to do equity, basically, is that it? Yes, sir. And I can't really hide it or say it in any other way. It is a request for equity. Does Tennessee allow equity in these circumstances? It does allow equitable tolling. I cannot represent to the court today that it allows it in the case. Because we're applying Tennessee law, right? Yes, sir. I cannot represent. We are deciding this as the Tennessee Supreme Court would do. That's correct, Your Honor. And I believe that with that question that Your Honor has asked, instead of making what Mr. Brock contends would be the logical leap of, it sounds in medical malpractice, so you have to jump through these hurdles to do a Tennessee Consumer Protection Act. What we're really saying is analyze the factual circumstances of what happened. Come here for stroke. We can treat you. He came for stroke. They didn't treat him. Come here for stroke. We will stabilize you. He came for stroke. They did not stabilize him. What's your best authority that the Tennessee Supreme Court would do the equitable remedies that you want us to do now? The Proctor v. Chattanooga orthopedics that I referred the court to earlier is the Deceptive Trade Practices Act. And there is one other case which is... We'll take a look at it. Yes, sir. And if I could submit that, I would do so. Thank you.  Thank you both for your argument. The case will be submitted. Would the clerk call any remaining cases? I wonder if I could stop you just a minute because I do have one last question. If you are allowed to proceed with this case, what do you get out of it? This is a statute I'm unfamiliar with. Each violation imposes a $50,000 fine. We've claimed six violations. So technically, monetary-wise, there's $300,000. Okay. Thank you. Let me submit it on the briefs. Sorry. I got you right in the middle of the sentence, didn't I? You may adjourn the court.